UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

ANGELA PIRRELLO,

        Plaintiff,

   - against -

GATEWAY MARINA, BRUNSWICK FAMILY
BOATS CO., INC. d/b/a MAXUM MARINE,
and U.S. MARINE CORPORATION,

    Defendants,

- - - - - - - - - - - - - - - - - X
GATEWAY MARINA,

     Third-Party Plaintiff,

       - against -

JAMES PIRRELLO,

     Third-Party Defendant.

- - - - - - - - - - - - - - - - - X
BRUNSWICK FAMILY BOATS CO., INC.
d/b/a MAXUM MARINE,

     Third-Party Plaintiff,

       - against -

RDS MANUFACTURING, INC.,

     Third-Party Defendant.

- - - - - - - - - - - - - - - - -X

<u>MEMORANDUM AND ORDER</u>

CV 2008-1798 (KAM)(MDG)

GO, United States Magistrate Judge:

    In this personal injury action arising from an explosion on
a boat, plaintiff Angela Pirrello asserts claims against
defendants Gateway Marina ("Gateway"), Brunswick Family Boats
Co., Inc. and U.S. Marine Corporation ("Brunswick"). Gateway

filed a third-party complaint against the owner of the boat and
Ms. Pirrello's father, James Pirrello, and Brunswick brought
third-party claims against RDS Manufacturing, Inc., the
manufacturer of the boat's gas tank. Gateway, Brunswick, and RDS
move for dismissal or lesser sanctions for the spoliation of
evidence.

## BACKGROUND

In her complaint, Ms. Pirrello alleges that on July 2, 2006,
she was injured as a result of an explosion aboard a 1993 Maxum
boat on which she was a passenger and her father James was the
owner and operator. Amended Verified Complaint ("Am. Comp.")
(ct. doc. 11) at ¶¶ 20-23. Plaintiff alleges that the explosion
was caused by a gas leak that resulted from water accumulating
and remaining stagnant in the gas tank compartment, causing the
tank to corrode and leak fuel. Id. at ¶ 23. She claims that
Brunswick is liable for a defect in the boat design or
manufacture and that Gateway failed to adequately maintain the
boat during the winter season preceding the explosion. Id. at
¶¶ 24, 31, 35. In response, Gateway alleges that the accident
was a result of Mr. Pirrello's negligence and Brunswick claims
that any defect was in the fuel tank manufactured by RDS.
Gateway Third Party Complaint (ct. doc. 22) at ¶ 19; Brunswick
Third Party Complaint (ct. doc. 52) at ¶ 26. Shortly after the
accident, Baron & Associates, plaintiff's former counsel, advised

Gateway by letter dated July 28, 2006, that it anticipated filing a claim against it for plaintiff's injuries. See ct. doc. 117 (attached to Supplemental Affirmation in Opposition to Motion to Dismiss as Exh. E). In September 2006, Mr. Pirrello hired Scott J. Schiffman, a marine surveyor, to investigate the cause of the incident.[1] 10/5/09 Schiffman Dep. at 15 (ct. docs. 77, 78). Mr. Schiffman inspected the boat on August 25, October 3, and October 7, 2006 at Performance Marine Towing and Salvage d/b/a Sea Tow ("Performance Marine"), where the boat was towed after the accident. Mr. Schiffman or Mr. Pirrello asked the marina to remove the gas tank to enable Mr. Schiffman to visually inspect the bottom of the gas tank and the compartment where the gas tank was installed.[2] Catapano Dep. at 27, 94-95 (ct. doc. 75); 10/5/09 Schiffman Dep. at 66-69. On October 6, 2006, the marina removed the tank after obtaining the consent of Mr. Pirrello. Catapano Dep. at 27, 29; J. Pirrillo Dep. at 75 (ct. doc. 74). The original gas tank was placed on the top of a nearby container or shed and a "dummy" gas tank was placed in its stead for sizing

---

[1] Sometime after she was released from the hospital, plaintiff was told by her father that he had hired a surveyor to determine the cause of the explosion on his boat. A. Pirrello Dep. at 13 (ct. doc. 72). Plaintiff did not instruct anyone to conduct an investigation to determine the cause of the explosion. Id. at 128.

[2] Although the defendants complain that plaintiff's expert caused the gas tank to be removed, see, e.g., Gateway's Reply Mem. at 3, 6, Gateway's counsel, Alfred Will, also requested that the gas tank be removed in preparation for his expert to conduct an inspection. Will Reply Aff. at ¶¶ 7, 8 and Exhs. 3, 4 (ct. doc. 89).

purposes.  Catapano Dep. at 42-43, 48, 87; 10/5/09 Schiffman Dep.
at 69; 12/14/09 Schiffman Dep. at 53 (ct. docs. 79, 80).
According to Cody Catapano, the owner of Performance Marine, Mr.
Pirrello did not expressly instruct the marina to preserve the
gas tank.  Catapano Dep. at 29, 36.  At one point in his
deposition, Mr. Pirrello testified that he instructed Mr.
Schiffman to preserve the gas tank but later testified that he
could not recall whether he gave such a direction.  J. Pirrello
Dep. at 84-85, 137-38.  Mr. Schiffman denied that he received any
such instructions from Mr. Pirrello.  12/14/09 Schiffman Dep. at
140.  Plaintiff, who had been recovering from her injuries, did
not instruct anyone to preserve the gas tank.  A. Pirrello Dep.
at 22-23.

     Mr. Schiffman prepared a report for Mr. Pirrello concluding
that water under the vessel's gas tank caused corrosion which led
to the gas leak and the resulting explosion.  See ct. doc. 76-2.
He opined that water seeped into the gas tank compartment because
the boat may have been pitched improperly when it was stored for
the winter season preceding the accident.  Id.  He further stated
that water was able to flow into the gas tank compartment due to
a flaw in the design.  Id.  A gas tank compartment should be
water tight and sealed so that water cannot seep in.  Id.

     The boat has remained at Performance Marine since the
accident and substantial storage fees have accrued.  On August 4,
2007, Intimidator Boat Works, which is affiliated with Sea Tow,

served on James Pirrello a Notice of Lien and Sale advising that it claimed a lien on the boat in the amount of $21,559.90 and that the boat would be auctioned on September 5, 2007.  Nichols Aff., Exh. B (ct. doc. 88-2).  According to the Notice, the estimated value of the boat was $3,000.  <u>See</u> <u>id.</u>  Mr. Catapano spoke with Mr. Pirrello after the Notice was served but the outstanding charges remained unpaid.  Catapano Dep. at 51-52.  No buyers appeared at the auction.  <u>Id.</u> at 47.  Sometime in 2008 or 2009, the gas tank was discarded as scrap.  <u>Id.</u> at 63-64.

Plaintiff commenced this action on January 9, 2008 in Supreme Court Kings County.  <u>See</u> ct. doc. 1.  Gateway removed the state court action to this Court on May 2, 2008.  <u>See</u> <u>id.</u>

On May 30, 2008, Gateway served plaintiff with a Notice of Discovery and Preservation of Evidence demanding preservation of the subject vessel.  <u>See</u> ct. doc. 71-5.  In June or July 2008, plaintiff, James Pirrello and plaintiff's former counsel, Seth Katz, met at counsel's office.  Katz Dep. at 27-28, 37 (ct. doc. 114).  Mr. Katz testified that at the meeting, he advised plaintiff, in the presence of her father, that they had a duty to preserve the boat in its present condition and make the boat and the gas tank available for inspection.  <u>Id.</u> at 25, 29, 31, 36-37, 40-41, 59, 65-66, 80.  By her affidavit, plaintiff denied being so advised.  Supp. Nichols Aff., Exh. B at ¶¶, 7, 9 (ct. doc. 117).  On the other hand, Mr. Katz also testified that "[b]ecause Ms. Pirrello was not the owner of the boat, because the boat was

-5-

not within her control or supervision, there is no way that we could have instructed her to preserve or maintain something that she did not own, and was not in control over." Katz Dep. at 56; <u>see also id.</u> at 59. Mr. Katz never contacted the marina to ask that the boat be preserved in its present condition.[3] <u>Id.</u> at 31, 33, 36-37, 54-55.

On June 17, 2008, Gateway filed a third party complaint against James Pirrello. On July 28, 2008, Gateway served upon Mr. Pirrello a Notice of Discovery and Preservation of Evidence demanding preservation of the subject vessel.

An initial conference was held before the undersigned on July 29, 2008. It is undisputed that counsel for Mr. Pirrello notified all parties at the conference that Mr. Pirrello was not in possession of the boat because of a lien. Gallo Aff. at ¶ 9 (ct. doc. 85). Following the conference, the Court filed a minute entry stating that "Plaintiff and/or third-party defendant must provide access to the vessel, including the gas tank, for inspection by the parties and counsel, in addition to a later examination by any liability expert." <u>See</u> minute entry filed on July 30, 2008.

On August 8, 2008, Mr. Katz sent a letter to counsel for defendants and Mr. Pirrello providing the boat's location and stating that "in accordance with the Court's Order of July 29,

---

[3] Mr. Katz testified that he thought the boat was transported to defendant Gateway's marina following the accident. Katz Dep. at 31, 33-34.

2008, access to the vessel, including the gas tank, for inspection by the parties and counsel will be provided upon sufficient advance notice to ensure availability of the marina staff."[4] Mr. Katz did not receive a response from any of the attorneys to schedule an inspection.

On August 19, 2008, Mr. Pirrello served initial disclosures on the parties which included a copy of the Notice of Lien and Sale. See Nichols Aff., Exh. D. Counsel for Mr. Pirrello also served a copy of the Notice of Lien and Sale on September 17, 2008, in response to document requests made by then-defendant Islander Boat Center and copied plaintiff's counsel and counsel for Gateway. See Nichols Aff., Exh. E.

On September 12, 2008, Mr. Katz filed a motion to be relieved as counsel. See ct. doc. 42. On October 17, 2008, this Court granted Mr. Katz's motion to withdraw and stayed the action until December 12, 2008 to give plaintiff an opportunity to obtain new counsel. See ct. doc. 47.

Regina Nichols, plaintiff's current counsel, entered a notice of appearance on December 16, 2008. On the same day, the Court held a status conference and directed that an inspection of

_____

[4] Although Gateway points to Mr. Katz's testimony that he does not recall attaching the Notice of Lien and Sale to his August 8, 2008 letter and does not recall ever seeing it, counsel for Gateway does not deny receiving it and, in any event, it is undisputed that Mr. Pirrello's counsel sent Gateway a copy about 10 days later. See Nichols Aff., Exh. D.

the boat be conducted by January 30, 2009.  <u>See</u> minute entry
dated December 17, 2009.

On December 17, 2008, counsel for Mr. Pirrello filed a
letter informing the parties that the boat was sent to auction on
September 5, 2007 but that no buyers appeared.  <u>See</u> ct. doc. 49.

In January 2009, counsel for all the parties, except for RDS
which had not yet been joined, visited the facility where the
vessel had been towed.  Unbeknownst to counsel at the time of the
inspection, the vessel did not contain the original gas tank that
was in the boat at the time of the accident.  However, the
original gas tank may have been on top of a shipping container
next to the vessel at the time of the inspection.[5]  Catapano Dep.
at 40-41, 86, 88.

At a conference held on May 21, 2009, the parties discussed
the issue of the disappearance of the fuel tank.  <u>See</u> minute
entry for May 21, 2009 conference.  After discovery on this
issue, the defendants filed the instant motions.

## <u>DISCUSSION</u>

The parties styled their motions as motions to dismiss or
for lesser sanctions.  Since the instant motions address the

---

[5] Without any explanation as to the basis for its belief,
Brunswick states that it "believes that at least as of the date
of this inspection, the 'original' gas tank that was previously
removed from the vessel was located within the vessel although it
had already been modified from its post-accident condition and
was not made available for a complete inspection."  <u>See</u> ct. doc.
116 at 4.

plaintiff's and James Pirrello's failure to preserve evidence,
they raise issues within my pretrial authority and I address them
under Rule 37 of the Federal Rules of Civil Procedure.  See Siani
v. SUNY at Farmingdale, 2011 WL 2580361, at *3 (E.D.N.Y. 2011)
(applying Rule 72(a) standard of review to ruling on motion for
spoliation sanctions); R.F.M.A.S., Inc. v. So, 271 F.R.D. 55, 57
(S.D.N.Y. 2010) (same).  However, should the parties file
objections to this memorandum and order, Judge Matsumoto will
determine the appropriate standard of review.

"Spoliation is the destruction or significant alteration of
evidence, or the failure to preserve property for another's use
as evidence in pending or reasonably foreseeable litigation."
West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir.
1999).  Under Fed. R. Civ. P. 37(b), the court may impose
sanctions for spoliation of evidence in violation of a court
order.  See id.; John B. Hull, Inc. v. Waterbury Petroleum
Prods., Inc., 845 F.2d 1172, 1176 (2d Cir. 1988).  "Even without
a discovery order, a district court may impose sanctions for
spoliation, exercising its inherent power to control litigation."
West, 167 F.3d at 779; see Residential Funding Corp. v. DeGeorge
Fin. Corp., 306 F.3d 99, 106-07 (2d Cir. 2002).  Any sanction
imposed should serve the threefold "aims of: (1) deterring future
spoliation of evidence; (2) protecting the defendants' interests;
and (3) remedying the prejudice defendants suffered . . . ."
West, 167 F.3d at 780.  "The determination of an appropriate

-9-

sanction for spoliation, if any, is confined to the sound discretion of the trial judge and is assessed on a case-by-case basis." Fujitsu Ltd. v. Federal Express Corp., 247 F.3d 423, 436 (2d Cir. 2001).

A party seeking a sanction for spoliation of evidence must establish "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind;' and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Residential Funding, 306 F.3d at 107; see Fujitsu, 247 F.3d at 436. "'Destruction of potentially relevant evidence obviously occurs along a continuum of fault ranging from innocence through the degrees of negligence to intentionality. The resulting penalties vary correspondingly.'" Townes v. Cove Haven, Inc., 2003 WL 22861921, at *3 (S.D.N.Y. Dec. 2, 2003) (quoting Welsh v. United States, 844 F.2d 1239, 1246 (6th Cir. 1988)).

(1) Duty to Preserve

As to the first criteria, "[t]he obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." Fujitsu, 247 F.3d at 436; see Kronisch v. United States, 150 F.3d 112, 127 (2d Cir. 1998). "[A]nyone who anticipates being a party or is a

-10-

party to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary." Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 217 (S.D.N.Y. 2003). "If a party cannot fulfill this duty to preserve because he does not own or control the evidence, he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence." Silvestri v. General Motors Corp., 271 F.3d 583, 591 (4th Cir. 2001).

Under the circumstances of this case, I find that both plaintiff and Mr. Pirrello had a duty to preserve the boat following the accident, including the gas tank. Counsel for plaintiff notified Gateway by letter on July 28, 2006 that plaintiff was contemplating filing a claim. Mr. Pirrello subsequently engaged Mr. Schiffman to determine the cause of the accident. Thus, plaintiff and her father clearly anticipated litigation early on and, by virtue of Mr. Schiffman's report, both should have recognized that the gas tank would be important to that litigation.

Ms. Pirrello argues that she had no duty to preserve because she was not the owner of the boat. However, courts take a broad view of Rule 34(a) of the Federal Rules of Civil Procedure in extending the duty to anyone who has the practical ability to obtain evidence. See Riddel Sports v. Brooks, 158 F.R.D. 555 (S.D.N.Y. 1994); 4A J. Moore, Moore's Federal Practice ¶ 34.17

(1994).  Given Ms. Pirrello's close relationship with Mr.
Pirrello and her expert's access to the boat, it is fair to
attribute the duty to preserve to her in addition to Mr.
Pirrello.[6]  Although the evidence is inconclusive as to whether
her counsel affirmatively advised her of her duty to preserve, I
find that both Mr. Pirrello and plaintiff had such a duty.[7]

On the other hand, even if plaintiff and Mr. Pirrello had a
duty to preserve following the accident, it does not necessarily
follow that the duty continued up until the time that the gas
tank was discarded.  Plaintiff and Mr. Pirrello contend that they
could not have had a duty to preserve when the gas tank was
discarded because ownership of the boat transferred from James
Pirrello to Intimidator Boat Works, Inc. on September 5, 2007,

---

[6] Language in the Amended Complaint quoted by Gateway
suggests that Ms. Pirrello was more involved in the use of the
boat than she testified to at her deposition.  My finding that
she had a duty to preserve the boat is not dependent on the
allegations in the complaint that "plaintiff operated the
aforementioned boat every season without incident, and stored it
every following winter without incident . . . ."  Verified
Amended Complaint at ¶ 21.  It is undisputed that plaintiff was
not the owner of the boat.

[7] Given this Court's finding that plaintiff had a duty to
preserve, it is unnecessary to discuss defendants' argument that
James Pirrello acted as an agent for plaintiff.  Suffice to say,
Gateway's contention that it is undisputed that Mr. Pirrello
acted on his daughter's behalf in hiring Schiffman to determine
the cause of the fire on Mr. Pirrello's boat is not entirely
accurate, since he was the owner.  Moreover, Mr. Pirrello's
attendance at plaintiff's first meeting with her counsel is not,
in itself, proof of an agency relationship.  Nonetheless, it is
notable that plaintiff's former counsel sent notice to Gateway of
its intention to file a claim in July 2006 even though plaintiff
testified that she did not meet with counsel until sometime in
2007 or 2008.

the date of the noticed auction. However, there is no evidence that the lien was perfected or that title to the boat actually passed from Mr. Pirrello to Intimdator Boat Works. In fact, Mr. Pirrello renewed the boat's registration on July 28, 2009 and stated in response to requests for admission dated September 17, 2008 that the boat had not changed ownership or title. See Supp. Will Aff., Exhs. 4, 6 (ct. docs. 114-9, 114-10).

Intimidator's lien pursuant to section 184 of the New York Lien Law, entitles the marina to detain the boat until the storage fees were paid, and if not paid, to secure payment by the sale of the boat. See Continental Ins. Co v. Consumer Towing and Collision, Inc., 189 Misc.2d 172, 174 (N.Y. Civil Court 2001). The lien law confers only the right to possession of the boat, but does not confer ownership. See Industrial Nat. Bank of R.I. v. Bulter Aviation Int'l, Inc., 370 F. Supp. 1012, 1017 (E.D.N.Y. 1974). Nevertheless, even if Mr. Pirrello retained legal ownership of the boat, neither Mr. Pirrello nor plaintiff had control over the gas tank at the time it was discarded.

Although I find that plaintiff and Mr. Pirrello had a duty to preserve the gas tank despite their lack of control over the boat, the obligation does not continue indefinitely. See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc., 473 F.3d 450, 458 (2d Cir. 2007); Fujitsu, 247 F.3d at 436; Gaffield v. Wal-Mart Stores East, LP, 616 F. Supp. 2d 329, 338 (N.D.N.Y. 2009); Townes, 2003 WL 22861921, at * 4; Sterbenz v. Attina, 205

F. Supp. 2d 65, 72 (E.D.N.Y. 2002). "'[A] potential spoliator
need do only what is reasonable under the circumstances.'"
Sterbenz, 205 F. Supp. 2d at 72 (quoting Hirsch v. General Motors
Corp., 266 N.J. Super. 222, 251, 628 A.2d 1108, 1122 (1993)); see
Townes, 2003 WL 22861921, at *4. It is generally not
unreasonable for the owner of a boat damaged by fire to retain it
for a period and then dispose of it. Cf. In re Wechsler, 121 F.
Supp. 2d 404, 420-21 (D. Del. 2000) (finding it unreasonable for
owner of vessel to destroy it after another party had already
agreed to pay for the vessel's continued storage). Likewise, it
would be unreasonable to expect the owner to store the boat
indefinitely at a cost that far exceeds the value of the boat.
Any of the parties could have incurred the expense of paying the
outstanding storage charges to preserve the boat or transported
it to a location where the storage charges could have been
minimized.

The parties' failure to conduct an inspection prior to the
attorney inspection in January 2009 weighs heavily against the
imposition of sanctions. See Allstate, 473 F.3d at 458
(reversing preclusion order where defendant did not request that
evidence be preserved and disclaimed any interest in evidence);
Fujitsu, 247 F.3d at 435-36 (affirming denial of sanctions where
defendant did not request inspection within one month of being
notified of damage to shipping container); Sterbenz, 205 F. Supp.
2d at 73 (denying claim for spoliation where defendant waited

-14-

three months to dispose of vehicle after plaintiff was notified of vehicle's location); Gaffield, 616 F. Supp. 2d at 338 (denying sanctions where plaintiff could have inspected bicycle in the nearly two years between the accident and filing of complaint); Klezmer v. Buynak, 227 F.R.D. 43, 52 (E.D.N.Y. 2005) (denying sanctions for failure to preserve maintenance records for ATV where plaintiff never requested inspection of ATV itself); Townes, 2003 WL 22861921, at *4 (denying sanctions where plaintiff could have requested inspection of pool for over one year from the date of the complaint). Importantly, none of the parties went to the shipyard to inspect the boat until January 2009, one year after plaintiff filed suit. Although Gateway served a demand to preserve the boat in July 2008, there is no evidence that any party made a request to inspect the boat prior to the gas tank being discarded. Even after Mr. Katz notified the parties at the initial conference of the existence of the lien, he sent a letter to all counsel on August 8, 2008 offering the boat for inspection and sent a copy of the Notice of Lien on the boat on August 19, 2008, none of the parties made any attempt to schedule an inspection.[8] Gallo Aff. at ¶ 9. The defendants argue that they were deprived of the opportunity to inspect the gas tank but, as discussed, they were put on notice of the lien

---

[8] While the defendants attribute the delay in scheduling an inspection to Mr. Katz's withdrawal as counsel, the order granting withdrawal was not issued until October 17, 2008.

and the location of the vessel and invited to conduct an
inspection at a time when such an opportunity existed.

Of course, since there is no conclusive evidence as to when
the gas tank was discarded, it is impossible to determine whether
the parties could have conducted a meaningful inspection had they
acted with more diligence.  Brunswick states that it "relied upon
the Notices to Preserve believing that key evidence, notably the
subject vessel and its components, including the gas tank, would
be preserved for inspection."  Brunswick's Mem. of Law at 9 n.11.
But, it would be unreasonable for Brunswick to expect that
evidence would be preserved indefinitely, particularly under the
circumstances.  It is clear that the parties waited to conduct an
inspection until one year after the complaint was filed, 6 months
after the initial conference at which they were notified of the
location of the boat and the lien placed on it and, even then,
conducted an inspection by the attorneys only after the Court
repeatedly raised the issue at court conferences.  In addition,
Gateway had notice that plaintiff anticipated filing a claim as
early as July 28, 2006, one and a half years before the complaint
was filed.  Nichols Supp. Aff. at ¶ 17 and Exh. E.

Subsequently, none of the defendants' attorneys asked the
boatyard to preserve the boat so that their expert could inspect
it either during the attorneys' inspection or after the
inspection.  See Catapano Dep. at 86.  Mr. Will stated in his
affidavit that he believed that the original gas tank was still

-16-

available for inspection as late as November 2009.[9]  Will Reply
Aff. at ¶ 5.  Yet, neither Mr. Will nor any of the other
defendants caused an expert to inspect the boat between the
attorney inspection in January 2009 and Mr. Will's communication
with plaintiff's counsel to schedule an expert inspection on
November 13, 2009.  Id. at ¶ 8.  Certainly, Gateway, if not the
other defendants, had the opportunity to conduct an inspection
long before the gas tank became unavailable.

Unfortunately, because of circumstances both within and
beyond the parties' control, there is no intrinsically fair
resolution to the unavailability of the gas tank for inspection.
Had Mr. Pirrello maintained insurance for the boat, there may
have been a more thorough investigation by the insurance company
and early notification to the boat manufacturer.[10]  To preclude
the plaintiff from using her expert would be inequitable as it
could effectively be dispositive to her case.[11]  Yet, either
plaintiff or Mr. Pirrello should have taken some measures to

---

[9] In its reply brief, Brunswick also states that it did not
learn of the destruction of the gas tank until November 2009.
Brunswick Reply Mem. at 4.  It appears that neither Mr. Will's
nor Brunswick's statement is accurate on this point.  By the
conference held on May 21, 2009, the parties were aware that the
fuel tank was missing.

[10] There is no evidence as to when Brunswick was first
notified of the accident.

[11] The defendants' argue that Mr. Schiffman's report is
inadmissible in any event.  Such arguments are irrelevant to the
instant motions but defendants are free to file Daubert motions
at the appropriate time.

preserve the boat or discussed with the other parties a proposal

for preservation.  At least, they did put the other parties on

notice of the location of the boat and the lien.  The existence

of the lien should have put the defendants on notice of the risk

that the boat would not be preserved as a result of the lien.

The Court recognizes that RDS, which appeared in this action

in March 2009, stands in a different position from the other

defendants.  RDS should not be prejudiced by the spoliation of

the gas tank because it did not have an adequate opportunity to

inspect it before it was discarded.  On the other hand, RDS has

not submitted any support for the proposition that a third party

defendant is entitled to dismissal as a result of spoliation by

the plaintiff or another third-party defendant.  RDS may be

entitled to an adverse inference instruction as to any direct

claims brought against it by plaintiff or Mr. Pirrello.  In the

event such claims are asserted, RDS is given leave to re-file its

motion.  As for the claims against it brought by Brunswick, both

RDS and Brunswick are in the same position of not having had an

inspection of the gas tank.

The authorities cited by defendants do not support their

contention that dismissal is warranted.  In <u>Brancaccio v.

Mitsubishi Motors Co., Inc.</u>, 1992 WL 189937 (S.D.N.Y. 1992), the

court dismissed the action because the subject vehicle was

repossessed before defendant inspected the seatbelt.  However,

there, the car was repossessed, and presumably became

-18-

unavailable, more than one year before the complaint was filed and there is no discussion as to whether the defendant had an opportunity to conduct an inspection before the car became unavailable. Moreover, Brancaccio was decided almost 20 years ago, long before the Second Circuit's decisions in <u>Fujitsu</u> and <u>Hamilton Beach</u>.

<u>Jackson v. Nissan Motor Co.</u>, 121 F.R.D. 311 (M.D. Tenn. 1988) is also distinguishable. Unlike here, the defendant in <u>Jackson</u> made repeated attempts to schedule an expert inspection only to be ignored by plaintiff's counsel prior to the car's destruction. Defendant made several phone calls to plaintiff's counsel, sent letters and served interrogatories to obtain the location of the car but received no response. These facts stand in stark contrast to the defendants' lackadaisical approach to conducting discovery here.

Thus, this Court finds that the defendants other than RDS failed to establish that plaintiff and James Pirrello had an obligation to preserve the gas tank whenever it was destroyed.

(2) <u>Culpable State of Mind</u>

Although culpability may be found where a party intentionally destroyed evidence or acted in bad faith, the requisite state of mind may sometimes be satisfied by a showing of ordinary negligence. <u>Residential Funding</u>, 306 F.3d at 101. Since the failure to produce evidence occurs "along a continuum of fault," the determination of the degree of culpability

-19-

required to support a finding of spoliation must be made on a case by case basis. <u>Reilly v. Natwest Markets Group Inc.</u>, 181 F.3d 253, 267 (2d Cir. 1999) (citation omitted). Such an approach affords trial judges the "leeway to tailor sanctions to insure that spoliators do not benefit from their wrongdoing -- a remedial purpose that is best adjusted according to the facts and evidentiary posture of each case." <u>Id.</u>

Although the passive conduct of plaintiff and Mr. Pirrello is not commendable, under all the circumstances present, I do not find that Ms. and Mr. Pirrello acted with a "culpable state of mind" in causing the gas tank to be discarded sufficient to warrant sanctions. There is no evidence that either plaintiff or Mr. Pirrello intentionally discarded the gas tank. Indeed, Mr. Pirrello testified that he did not know that the gas tank had been discarded until after the January 2009 inspection. J. Pirrello Dep. at 80-81. Rather, their inaction by failing to take measures to remove the lien on the boat or ask Mr. Catapano to preserve the gas tank resulted in its spoliation. On the other hand, as discussed above, the other parties to the action also could have taken some action to remove the lien on the vessel or otherwise request that Mr. Catapano preserve the boat. The defendants point out that neither plaintiff nor Mr. Pirrello served the Notices to Preserve on Mr. Catapano, but apparently neither did defendants. Thus, to the extent that plaintiff and Mr. Pirrello were negligent in their failure to preserve the gas

tank, the other parties were dilatory in conducting an inspection
of the boat and in failing to take measures to preserve the gas
tank.

The defendants rely heavily on plaintiff's testimony that
she did not care what happened to the boat following the accident
as evidence that her failure to preserve was willful.  However,
plaintiff's deposition testimony shows nothing more than that
plaintiff was not actively involved in the conduct of the
litigation and generally, was not interested in what happened to
a boat that she did not own.  A. Pirrello Dep. at 127-31.

This case is distinguishable from In re Wechsler, 121 F.
Supp. 2d 404 (D. Del. 2000), where a ship caught fire while
docked at a marina.  Defendants argue that In re Wechsler
supports their position because the court imposed judgment
against the vessel's owner for his destruction of what remained
of the vessel before the claimants could inspect it and determine
the cause and origin of the fire.  However, defendants omit that
the vessel owner insisted on destroying the vessel despite an
offer by one of the claimants to assume responsibility for all
the costs associated with storing the vessel.  121 F. Supp. 2d at
414.  The court thus found that the vessel owner intentionally
destroyed the ship for the purpose of preventing the other
claimants from inspecting it.  Id. at 419-20.  Nonetheless, the
court denied sanctions against the vessel owner for damage to the
vessel when it was raised.  Prior to the vessel's raising, the

vessel owner refused to let the claimants inspect the vessel,
instructed the salvage company to treat the vessel as if it were
being raised as wreckage instead of for its forensic value and
refused to consider additional methods of raising the vessel
which had a higher probability of leaving the vessel intact.  Id.
at 416.  However, the vessel owner informed the other parties
that they could raise the vessel in a different manner providing
they bore the additional costs of doing so.  None of the
claimants accepted the offer.  Not surprisingly, the vessel broke
into several pieces while being raised.  The court found that it
would be inequitable to sanction the vessel owner because the
other parties could have paid the additional costs associated
with preserving the vessel.  In language that is equally
applicable here, the court stated, "[e]ven though these parties
might be prejudiced by the destruction of this evidence, this
prejudice was avoidable."  Id. at 418.

(3) Relevance

In this context, relevance means more than sufficiently
probative to satisfy Fed. R. Evid. 401.  See Residential Funding,
306 F.3d at 108-09.  When the spoliation is caused by negligence,
the party claiming spoliation must demonstrate that the destroyed
evidence would have supported its claims.  See id. at 107-09;
Byrnie, 243 F.3d at 108-10; Zubulake, 220 F.R.D. at 220.

"Where a party destroys evidence in bad faith, that bad
faith alone is sufficient circumstantial evidence from which a

reasonable fact finder could conclude that the missing evidence was unfavorable to that party." Residential Funding, 306 F.3d at 109. "Similarly, a showing of gross negligence in the destruction or untimely production of evidence will in some circumstances suffice, standing alone, to support a finding that the evidence was unfavorable to the grossly negligent party." Id. Otherwise, the moving party must submit extrinsic evidence sufficient to infer that the missing documents would have been favorable to it. Id.

The missing gas tank is indisputably critical to plaintiffs' claims. Plaintiff alleges that the explosion was caused by a leak in the gas tank. Without the original gas tank, defendants are unable to conduct tests adequate to determine the cause of the leak. On the other hand, although Mr. Schiffman's photos of the gas tank are obviously not the best evidence on which defendants' experts could rely to form an opinion regarding whether the hole depicted in the photos was caused by corrosion as Mr. Schiffman claims, between the photos, Mr. Schiffman's report and an inspection of the boat itself, including the gas tank compartment, the defendants' experts have some basis to form an opinion regarding the cause of the leak. In addition, Mr. Catapano, a third-party, was present during Mr. Schiffman's inspection and can testify as to his observations. Even if the gas tank had been available to defendants' experts, such an inspection would have taken place, at the earliest, almost three

years after the accident.  There is no evidence as to what effect the gas tank's exposure to the elements for such a long period of time following the accident would have had on an experts' ability to determine the cause of the corrosion that existed at the time of the accident.  As to the claims against Brunswick and Brunswick's claims against RDS, to the extent these claims are based on a design defect rather than a manufacturing defect, the particular boat and gas tank involved in the accident are less critical.  See Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79-80 (3d Cir. 1994); Rodriguez v. Pelham Plumbing & Heating Corp., 20 A.D.3d 314, 315-16 (3d Dep't 2005).

Importantly, there is no evidence of bad faith on the part of either plaintiff or Mr. Pirrello.  Even if their conduct amounts to gross negligence, the circumstances of the spoliation in this case are insufficient to support a finding that the gas tank would have yielded evidence unfavorable to them.  The defendants have not shown that an intact gas tank would have yielded evidence unfavorable to plaintiff or Mr. Pirrello, a prerequisite to imposition of the most severe sanctions.  See In re Kessler, 2009 WL 2603104, at *19 (E.D.N.Y. March 27, 2009); In re WRT Energy Sec. Litig., 246 F.R.D. 185, 197-98 (S.D.N.Y. 2007).

Finally, although the defendants are not entitled, on the record presented, to have the benefit of an adverse inference instruction, they are free to introduce evidence and make

arguments regarding the circumstances surrounding the discarding of the gas tank.  See Gaffield v. Wal-Mart Stores East, L.P., 616 F. Supp. 2d 329, 338 n.8 (N.D.N.Y. 2009); Klezmer, 227 F.R.D. at 51-52.  In addition, plaintiff and Mr. Pirrello must produce all documents created by Mr. Schiffman pertaining to his inspection, including any contemporaneous notes.

## CONCLUSION

For the foregoing reasons, the motions of Gateway, Brunswick and RDS to dismiss or for lesser sanctions are denied.

**SO ORDERED.**


Dated: Brooklyn, New York
       September 30, 2011


                              _____/s/_____
                              MARILYN D. GO
                              UNITED STATES MAGISTRATE JUDGE